1  Kenneth D. Freundlich (SBN119806)
   FREUNDLICH LAW
2  16133 Ventura Blvd. Suite 1270
   Encino, CA  91436
3  P: (818) 3775-3790
   F: (310) 275-5351
4  E-Mail: ken@freundlichlaw.com

5

   Attorneys for Defendant COURTNEY LOVE COBAIN
6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  JESSICA LABRIE, an individual, | Case No. CV12-7793 GHK (JCGx) |
| 12              Plaintiff, | **DEFENDANT COUTNEY LOVE COBAIN'S MOTIONS AS TO PLAINTIFF JESSICA LABRIE'S FIRST AMENDED COMPLAINT:** |
| 13        vs. | **1.    TO DISMISS AND/OR TRANSFER VENUE PURSUANT TO FED. R. CIV. P. 12(b)(3);** |
| 14  COURTNEY LOVE COBAIN, | |
| 15  an individual; and DOES 1 through 25, inclusive | **2.    TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(a);** |
| 16              Defendants. | **3.    TO DISMISS CLAIMS ONE THROUGH THREE AND CLAIMS FIVE THROUGH EIGHT PURSUANT TO Fed. R. CIV. P. 12(b)(6)** |
| 17 | |

18                              **MEMORANDUM OF POINTS
19                              AND AUTHORITIES IN SUPPORT
                               THEREOF AND DECLARATIONS
20                              OF COURTNEY LOVE COBAIN
                               AND KENNETH D. FREUNDLICH
21                              IN SUPPORT THEREOF**

22                              DATE:        January 7, 2013
23                              TIME:              9:30 am
                               PLACE:      Ctrm. 650
24                                 Courtroom of the Hon George H.
                                        King,
25                                 United States District Judge

26

27

28
                                      **CV12-7793 GHK (JCGx)**
   **DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO  DISMISS AND/OR TO TRANSFER VENUE
   RE FAC; MEMORANDUM AND DECLARATIONS IN SUPPORT THEREOF**

**TO PLAINTIFF AND HIS COUNSEL OF RECORD HEREIN:**

Please take notice that on January 7, 2013, at 9:30 a.m., in Courtroom 650 of the Honorable George H. King of the United States District Court for the Central District of California, Roybal Building located at 255 East Temple Street Los Angeles, CA 90012-3332, Defendant Courtney Love Cobain ("Love") will, and hereby does, move the Court for an order:

1. Pursuant to Fed. R. Civ. P. 12 (b)(3), to dismiss and/or transfer venue of this action to the Southern District of New York;

2. In the alternative, pursuant to 28 U.S.C. §1404(a), to transfer venue of this action to the Southern District of New York because the present venue is an inconvenient forum;

3. Pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff's six employment claims within Plaintiff's First Amended Complaint ("FAC"): the First through Third Claims under the California Labor Code (the "Labor Code claims") and the Fifth through Seventh Claims for Wrongful Constructive Termination in Violation of Public Policy (so-called "*Tameny* claims") (all six, collectively the "Employment claims");

4. Pursuant to Fed. R. Civ. P. 12 (b)(6), to dismiss Plaintiff's Eighth Claim for Intentional Infliction of Emotional Distress ("IIED") for failure to state a cognizable claim.

These Motions are based on the grounds that this action (or parts thereof) is subject to dismissal with prejudice and/or transfer on the following bases:

1. Love does not reside within this district but rather in the Southern District of New York;

2. A substantial part of the alleged events and omissions did not take place in the Central District of California;

**DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO  DISMISS AND/OR TO TRANSFER VENUE RE FAC; MEMORANDUM AND DECLARATIONS IN SUPPORT THEREOF**

3.     This action could have been brought in the Southern District of New York;

4.     Transfer to the Southern District of New York would promote the convenience of the key witnesses (the majority of which, like Love, live in New York) and parties, reduce the cost of litigation, and serve the interests of justice;

5.     Transfer may provide easier access to the sources of proof;

6.     Plaintiff resides in Canada and does not, and during the relevant times, did not conduct regular business in Los Angeles;

7.     The Employment claims must be dismissed because as a matter of statutory construction and constitutional principles, or alternatively because Plaintiff has not alleged facts indicating an employment relationship, these claims are not cognizable;

8.     The IIED claim fails to state a cognizable claim.

Moving party complied with the requirements of L.R. 7-3 via a letter to Plaintiff's counsel dated October 22, 2012 and via a telephone conversation with Plaintiff's counsel on or about November 1, 2012.  Freundlich Decl. ¶3.

Dated:    November 14, 2012              FREUNDLICH LAW
                                         Kenneth D. Freundlich

                                         By: _____

                                             Kenneth D. Freundlich
                                             Attorneys for Defendant
                                             Courtney Love Cobain

**DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO  DISMISS AND/OR TO TRANSFER VENUE RE FAC; MEMORANDUM AND DECLARATIONS IN SUPPORT THEREOF**

# TABLE OF CONTENTS

**I.**    INTRODUCTION STATEMENT ...................................................................1

**II.**    PLAINTIFFS' CHOICE OF VENUE IS IMPROPER ...................................4

    **A.**    Love Does Not Reside within the Central District of California, but Rather within the Southern District of New York .................5

    **B.**    A *Substantial Part* of the Alleged Events and Omissions in this Action Did *Not* Take Place within the Central District of California ........................................................................................................5

**III.**    In The Alternative, This Action Should Be Transferred To The Southern District Of New York Because Plaintiff's Chosen Venue Is An Inconvenient Forum.....................................................................................7

    **A.**    This Action Could Have Been Brought in the Southern District of New York ......................................................................................8

    **B.**    The Ninth Circuit Factors Weigh Heavily in Favor of Transfer to the Southern District of New York.........................................8

        1.    Transfer to the Southern District of New York will promote the convenience of the witnesses and parties and reduce the cost of litigation. .............................................................................................8

        2.    Transfer will provide easier access to sources of proof. ................................................................................................................10

        3.    Plaintiff's choice of forum is to be afforded little weight here. .............................................................................................................10

        4.    The respective parties' contacts with the forum. .....................11

        5.    The contacts relating to the plaintiff's cause of action in the chosen forum .....................................................................................11

        6.    The state that is most familiar with the governing law    12

        7.    The availability of compulsory process to compel attendance of unwilling non party witnesses...................................................12

**IV.**    THE COURT SHOULD DISMISS ALL OF LABRIE'S CLAIMS, EXCEPT FOR THE BREACH OF CONTRACT CLAIM ....................................................................................................................13

    **A.**    Standard Governing a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)................................................................................................13

    **B.**    All Six of Labrie's Employment Claims Fail......................................14

i                **CV12-7793 GHK (JCGx)**

**DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO  DISMISS AND/OR TO TRANSFER VENUE RE FAC; MEMORANDUM AND DECLARATIONS IN SUPPORT THEREOF**

1     1. Labrie's *Tameny* claims fail because no purported conduct giving rise to those claims is alleged to have occurred within California.................................................................................14

     2. The Employment claims fail because Labrie has not alleged facts that she was Love's employee ...................................15

     3. Labrie's Employment claims fail on Constitutional grounds .................................................................................16

  **C.** Labrie's IIED Claim is Insufficiently Pled and Must Be Dismissed .............................................................................17

**V.** CONCLUSION ...........................................................................18

**CV12-7793 GHK (JCGx)**

**DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO  DISMISS AND/OR TO TRANSFER VENUE RE FAC; MEMORANDUM AND DECLARATIONS IN SUPPORT THEREOF**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allstate Insurance Co. v. Hague*,
   449 U.S. 302 (1981) ........................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................2, 13

*Balistreri v. Pacifica Police Dept.*,
   901 F.2d 696 (9th Cir. 1988) ................................................... 13

*Bartholomew v. Virginia Chiropractors Association*,
   612 F. 2d 812 (4th Cir. 1979) .....................................................4

*Bates v. C &S Adjusters, Inc.,*
   980 F. 2d 865 (2d Cir. 1992) ...................................................... 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................2, 13, 15

*Braunling v. Countrywide Home Loans, Inc.*,
   220 F.3d 1154 (9th Cir. 2000) ...................................................17

*Bryant v. ITT Corp.*,
   48 F.Supp.2d 829 (N.D.Ill.1999) .............................................11

*Cheng v. Boeing Co.*,
   708 F.2d 1406 (9th Cir. 1983) .....................................................9

*Deputy v. Long-Term Disability Plan of Sponsor Aventis Pharmaceuticals*,
   2002 WL 31655328 (N.D. Cal. Nov. 21, 2002)...........................11

*E. & J. Gallo Winery v. F. & P.S.p.A.*,
   404 F. Supp.465 (E.D. Cal.1994) ..........................................7, 8

*eCash Technologies v. Guargliardo*,
   127 F. Supp. 2d 1069 (C.D. Cal. 2000).....................................13

*English v. United Brands Co.*,
   1974 U.S. Dist. LEXIS 11702 (N.D. Cal. 1974)......................10

*Erlich v. Menezes*,
    21 Cal.4th 543 (1999) ........................................................................................18

*Green v. Ralee Engineering Co.*,
    19 Cal.4th 66 (1998) ...................................................................................14, 15

*Healy v. Beer Institute*,
    491 U.S. 324 (1989) .........................................................................................16

*Home Ins. Co. v. Dick*,
    281 U.S. 397 (1930) .........................................................................................17

*In re Volkswagon of America, Inc.*,
    506 F. 3d 376 (5th Cir. 2007) ............................................................................9

*Janken v. GM Hughes Elecs.*,
    46 Cal.App.4th 55 (1996) .................................................................................18

*Jenkins Brick Co. v. Bremer*,
    321 F. 3d 1366 (11th Cir. 2003) ........................................................................6

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) .............................................................................8

*Lamont v. Haig*,
    590 F. 2d 1124 (D.C. Cir. 1978) .......................................................................6

*Leroy v. Great Western United Corp.*,
    443 U.S. 173 (1979) ...........................................................................................4

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
    89 F.R.D. 497 (C.D. Cal. 1981) ........................................................................8

*Lou v. Belzburg*,
    834 F. 2d 730 (9th Cir. 1987) ..........................................................................10

*Miracle Blade, LLC v. Ebrands Commerce Group, LLC*,
    207 F. Supp. 2d 1136 (D. Nev. 2002) ..............................................................10

*Myers v. Bennett Law Offices*,
    238 F. 3d 1068 (9th Cir. 2001) ..........................................................................6

*Nat'l Foreign Trade Council v. Natsios*,
    181 F.3d 38 (1st Cir. 1999) .............................................................................16

**DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO DISMISS AND/OR TO TRANSFER VENUE
RE FAC; MEMORANDUM AND DECLARATIONS IN SUPPORT THEREOF**

*North Alaska Salmon Co. v. Pillsbury,*
   174 Cal. 1 (1916) .................................................................................. 15

*Olberding v. Illinois Cent. R. Co.,*
   346 U.S. 338 (1953) .................................................................................. 4

*Parker v. Saturdays Group,*
   *U.S. Dist. LEXIS* 19114 (N.D. Cal. Nov. 13, 1992) ................................ 10

*Priyanto v. M/S AMSTERDAM,*
   2009 WL 175739 (C.D. Cal. Jan. 23, 2009) ....................................... 14, 15

*Reiffin v. Microsoft Corporation,*
   104 F. Supp. 2d 48 (D.C. Cir. 2000) ................................................. 2, 11

*Sistare-Meyer v. Young Men's Christian Assn.,*
   58 Cal.App.4th 10 (1997) ................................................................. 2, 15

*Technograph Printed Circuits, Ltd. V. Packard Bell Electronic Corp.,*
   290 F. Supp. 308 (C.D. Cal 1968) .......................................................... 5

*Tenefrancia v. Robinson Export & Import Corp.,*
   921 F. 2d 556 (4th Cir. 1990) ................................................................ 5

*Varisco v. Gateway Science and Engineering, Inc.,*
   166 Cal.App.4th 1099 (2008) .......................................................... 2, 15

*Walker v. Boeing Corp.,*
   218 F.Supp.2d 1177 (C.D. Cal. 2002) ................................................. 18

*Zito v. Steeplechase Films, Inc.,*
   267 F. Supp. 2d 1022 (N.D. Cal. 2003) ............................................... 13

STATUTES

28 U.S.C. §1391 .................................................................................. 4, 7, 8

28 U.S.C. §1404(a) ......................................................................... 3, 7, 9, 10, 12

28 U.S.C. §1406(a) .................................................................................. 3, 4, 7

OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)(2) ........................................................................... 13

**DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO DISMISS AND/OR TO TRANSFER VENUE
RE FAC; MEMORANDUM AND DECLARATIONS IN SUPPORT THEREOF**

1

Fed. R. Civ. P. 8 (b)(3) ......................................................................2, 4

2

Fed. R. Civ. P. 12 ..............................................................................*passim*

3

West, *Cal. Prac. Guide Employment Litigation* 11:116 ............................................2, 15

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CV12-7793 GHK (JCGx)**
**DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO  DISMISS AND/OR TO TRANSFER VENUE
RE FAC; MEMORANDUM AND DECLARATIONS IN SUPPORT THEREOF**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION STATEMENT

Plaintiff Jessica Labrie ("Plaintiff" or "Labrie"), who at all relevant times has been a resident of Vancouver, British Columbia, Canada, has chosen Los Angeles, California as the place to mount her baseless attacks on Defendant Courtney Love Cobain ("Ms. Love" or "Love") who at all times relevant to this matter has resided in New York City.[1]

In the face of Ms. Love's previous motion to dismiss and/or transfer venue, *see* Doc. No. 5, and recognizing that the initial complaint was both insufficient as to venue allegations and as to the substance of the matter, Labrie filed her First Amended Complaint ("FAC"), *see* Doc. No. 7, dropping the misplaced fraud-based claims and trying unsuccessfully to beef up the allegations to justify filing this case in Los Angeles, which is nearly three thousand miles away from Love's residence and where, at best, only a miniscule amount of the alleged operative facts took place.[2]

Labrie's action is, at most, a garden variety breach of contractclaim, which she has inflated with seven far-reaching, additional claims - - six employment-related claims ("Employment claims") grounded in the California Labor Code or based upon alleged violations of public policy as codified in California statutes.[3]   Of these Employment claims, three are essentially wage claims alleging violations of the

---

[1] *See* FAC ¶1; Love Dec. ¶2.
[2] In fact, as set forth herein, Labrie came to Los Angeles only for two brief trips—for a total of 16 out of the 379 days—i.e., approximately 4% of the time—she worked for Ms. Love.  *See* Love Decl. ¶5.
[3] Labrie alleges that *on or about June 14, 2010*, she was hired to work for Love as an "Administrative Assistant and Forensic Research Aide," FAC ¶12, whose responsibilities allegedly included "conducting research, preparing written reports, creating document organizational systems, and providing assistance with [Love's] everyday activities."  FAC ¶13   Labrie claims that she was to be paid $30 per hour, FAC ¶24, often worked more than 60 hours per week, FAC ¶25, and was asked to do various unsavory things for which there is likely to be no proof.  FAC ¶23.

**DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO  DISMISS AND/OR TO TRANSFER VENUE RE FAC; MEMORANDUM AND DECLARATIONS IN SUPPORT THEREOF**

1  California Labor Code[4]  ("Labor Code claims"), and three are duplicative wrongful

2  constructive termination claims (so-called "*Tameny* claims") based on supposed

3  violations of California public policy[5].

4        Labrie's remaining claim is one for intentional infliction of emotional distress

5  (*i.e.,* the Eighth Claim) ("IIED claim"), a claim which is irreparably infirm.

6        Ignoring the lack of any substantial connection to California, and seeking to

7  obtain an unfair advantage by locating this case where neither the parties nor the bulk

8  of the relevant witnesses are located, Plaintiff filed this action in the California

9  Superior Court located in Los Angeles, California, an action which Love then

10  properly removed to this Court.[6] The only people located here are the attorneys and a

11  few minor witnesses, and such blatant "forum shopping" should not be condoned.

12  *See Reiffin v. Microsoft Corporation*, 104 F. Supp. 2d 48, fn. 12 (D.C. Cir. 2000).

13        The gravamen of Labrie's FAC appears to be that Love failed to pay her for

14  time she allegedly devoted to working for Ms. Love as an independent contractor.[7]

15  However, there is no basis for this action to proceed in California, and Love seeks

16  dismissal of this action under FRCP 12(b)(3), or, in the alternative, to transfer this

17

18

---

19  [4] These are the First through Third Claims for Failure to Pay Wages, to Pay Overtime, and to Reimburse Reasonable Business Expenses.

20  [5] These are the Fifth through Seven Claims for Wrongful Constructive Termination in Violation of Public Policy (the so-called "*Tameny* claims").

21  [6] Love filed the removal papers on September 12, 2012.  *See* Doc. Nos. 1 and 2.

22  [7] Labrie solely makes cursory allegations that Labrie was Love's employee, *see, e.g.,* FAC ¶28, and that Love "directed or "instructed" Labrie to perform various tasks, *see, e.g.,* FAC ¶¶14-15.

23  Accordingly, Labrie's Employment claims fail to meet the federal pleading standard because Labrie does not allege **any facts** indicating that she had anything other than an independent contractor relationship with Love.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  ("Factual

24  allegations must be enough to raise a right to relief above the speculative level, . . . ."); *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("To survive a motion to dismiss, a complaint must contain

25  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.") (quoting Twombly, 550 U.S. at 570); *see also Varisco v. Gateway Science and Engineering, Inc.*,

26  166 Cal.App.4th 1099, 1102-03 (2008) (holding that independent contractors cannot assert *Tameny* claims) (citing *Sistare-Meyer v. Young Men's Christian Assn.*, 58 Cal.App.4th 10, 18 (1997)

27  (same)); West, *Cal. Prac. Guide Employment Litigation* 11:116 ("Independent contractors are not 'employees' covered by [California's] wage and hour laws.").

28

---

**DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO  DISMISS AND/OR TO TRANSFER VENUE
RE FAC; MEMORANDUM AND DECLARATIONS IN SUPPORT THEREOF**

case to the Southern District of New York because the Central District of California is an improper venue.

It is undisputed that Labrie "is and at all times [mentioned in the FAC] was a resident of the City of Vancouver, British Columbia, Canada." FAC ¶1. As to Ms. Love, Labrie intentionally does not allege the residency or citizenship of Ms. Love. Instead she merely alleges (albeit incorrectly) that "[Love] is an individual doing business in the state of California," FAC ¶2, which misleadingly avoids the necessary and appropriate allegation of Love's residency which, indisputably, is New York. *See* Love Dec. ¶2. Ms. Labrie filed suit in the wrong court. She complains of a chain of events, an insubstantial part of which took part in Los Angeles, and none of the parties reside here. This is an insufficient basis for asserting venue under the Federal Rules.

Where venue is improper, the District Court must dismiss the action or alternatively, transfer the action to a proper venue. *See* 28 U.S.C. §1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

In the alternative, even if the Court finds that the Central District of California is a proper venue, Love seeks the transfer of this Action (pursuant to 28 U.S.C. §1404(a)) to the Southern District of New York because doing so would serve the "interest of justice" and the "convenience of parties and witnesses." *See* 28 U.S.C. §1404(a).

As Ms. Love's declaration demonstrates, *inter alia*: (i) Love does not keep an office or residence in this District nor does she do regular business from here (Love Dec. ¶3), (ii) key witnesses in this matter are located in New York or out of this country altogether, and (iii) at best, an insubstantial part of the events giving rise to this case took place near here (*See* Love Dec. ¶5).

Accordingly, Love respectfully requests that this Court grant this Motion to dismiss the case or transfer venue to the United States District Court of the Southern District of New York located in New York, New York.

Moreover, because there is simply no basis for the application of California employment law to these proceedings, and because Plaintiff has so insufficiently pled all claims (with the exception of the Fourth Claim for Breach of Contract), this Court is respectfully requested to dismiss all claims within the FAC (except for the Fourth Claim), whether or not the Court decides to retain the case.

## II.   PLAINTIFFS' CHOICE OF VENUE IS IMPROPER

Fed. R. Civ. P. 12(b)(3) allows a defendant to bring a motion to dismiss or transfer venue on the basis of improper venue.

The issue of venue in the federal courts is governed entirely by statute. *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 181 (1979). When venue is improper, a court must dismiss or transfer the case. *See* 28 U.S.C. § 1406(a).

Venue statutes are generally intended to protect defendants from being forced to defend in an unfair or inconvenient forum. *See Leroy*, 443 U.S. at 183-84. Moreover, "[t]he requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Olberding v. Illinois Cent. R. Co.*, 346 U.S. 338, 340 (1953).

Once Love has raised an objection to venue, Labrie bears the burden of establishing that the venue she has selected is proper. *See Bartholomew v. Virginia Chiropractors Association*, 612 F. 2d 812, 816 (4th Cir. 1979).

In determining whether a particular venue is proper, courts look to 28 U.S.C. § 1391(b), which provides:

"(b)   A civil action may be brought in--

(1) a judicial district in which any defendant resides, if all

defendants are residents of the State in which the district is

located;

(2) a judicial district in which a substantial part of the events

or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action

is situated; or

(3) if there is no district in which an action may otherwise be

brought as provided in this section, any judicial district in

which any defendant is subject to the court's personal

jurisdiction with respect to such action."

For the following reasons, the Central District of California is an improper venue; whereas, the Southern District of New York is a proper venue.

**A.** **Love Does Not Reside within the Central District of California, but Rather within the Southern District of New York**

For venue purposes, a party's residence is determined as of the time an action is commenced, not when the claim for relief arose. *Tenefrancia v. Robinson Export & Import Corp.*, 921 F. 2d 556, 559 (4th Cir. 1990); *Technograph Printed Circuits, Ltd. V. Packard Bell Electronic Corp.*, 290 F. Supp. 308, 326 (C.D. Cal 1968).

Here, Love, the only defendant, resides in New York City, New York and has continuously resided there since 2009 before the time period referenced in the FAC. Love Dec. ¶2.  Therefore, Love "resides" within the Southern District of New York and not within the Central District of California.

**B.** **A *Substantial Part* of the Alleged Events and Omissions in this Action Did *Not* Take Place within the Central District of California**

Plaintiff's FAC, particularly when considered in light of Ms. Love's declaration, makes it clear that the present forum is an improper venue and is an

obvious attempt by Plaintiff to file this case where her Counsel is located and out the convenient reach of the Defendant.

It is quite clear that a "substantial part" of the operative events in this action did not take place within Los Angeles.  What constitutes a "substantial part" is to be determined in light of the purpose of the venue statute:  "[T]he substantiality of the operative events is determined by assessment of their ramifications for efficient conduct of the suit ...." *Lamont v. Haig*, 590 F. 2d 1124, 1134 (D.C. Cir. 1978); *Myers v. Bennett Law Offices*, 238 F. 3d 1068, 1076 (9th Cir. 2001).  Particular emphasis is put on the place where parties acted or were engaged in business.  *See Bates v. C &S Adjusters, Inc.,* 980 F. 2d 865, 867 (2d Cir. 1992); *Myers*, 238 F. 3d at 1076; *Jenkins Brick Co. v. Bremer*, 321 F. 3d 1366, 1371 (11th Cir. 2003).

Here, the events allegedly giving rise to this lawsuit took place from June 2010 to June 2011.  *See* FAC ¶¶12, 41.  For only 16 days—merely approximately 4% of that time—Plaintiff worked from Los Angeles on a transient basis.  *See* Love Dec. ¶5.  The insubstantial nature of this time period is highlighted by the fact that Labrie does not allege that she was working from Los Angeles when the events or omissions concerning her IIED and *Tameny* claims supposedly took place.  *See, e.g.*, FAC ¶¶23, 76-82, 83-88, 89-94, and 95-99.  Moreover, there is no dispute that for nearly all of the time she worked for Love, Plaintiff provided whatever services Plaintiff provided from Plaintiff's residence in Canada, while Love resided in New York and conducted business mostly from there.  *See* FAC ¶¶1, 16-17, 21; Love Dec. ¶¶1-3, 5.

In response, Plaintiff might contend that Love's sporadic trips to Los Angeles, where the two never met face-to-face and where e-mails between Love and Labrie might have been exchanged, constituted the conduct of substantial events in this matter.  That would be nonsense.

The only face-to-face meeting between the parties occurred at Love's apartment in New York City.  Love Dec. ¶5.  Love's infrequent stays in Los Angeles

were not substantial events of this lawsuit, and, for the most part, Love dealt with Labrie from Love's home in New York or from a computer Love had with her on the road away from this District.

It is clear that there is an insufficient amount of connection to this District for this case to be brought here and it should be dismissed or, in the alternative, transferred to the Southern District of New York, where Loves resides and where she was located the vast majority of the time she communicated with Plaintiff during the "events or omissions" alleged within the FAC. *See* 28 U.S.C. §§1391(b)(1) and (2); 28 U.S.C. §1406(a).

**III.    In The Alternative, This Action Should Be Transferred To The Southern District Of New York Because Plaintiff's Chosen Venue Is An Inconvenient Forum**

Even if venue in the Central District of California were technically proper (it is not), transfer to the Southern District of New York would remain the appropriate disposition of this case.  Under 28 U.S.C. §1404(a), the Court has broad discretion to transfer this case, providing that : "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In deciding a motion to transfer, the court must consider the three elements set forth in the statute: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. 28 U.S.C. §1404(a). The decision to transfer lies within the sound discretion of the trial judge, *id.*, and these factors are interpreted broadly to allow the court to consider the particular facts of each case. *E. & J. Gallo Winery v. F. & P.S.p.A.*, 404 F. Supp.465, 466 (E.D. Cal.1994).

In determining if the elements are met, courts within the Ninth Circuit consider the following factors: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law,

**DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO  DISMISS AND/OR TO TRANSFER VENUE RE FAC; MEMORANDUM AND DECLARATIONS IN SUPPORT THEREOF**

(3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non party witnesses, and (8) the ease of access to sources of proof." *Zeta-Jones*, 372 F. Supp. 2d at 575-76 (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000)); *see also E&J Gallo Winery*, 404 F. Supp. at 466.

An evaluation of these factors leaves no doubt that the Southern District of New York is a far more convenient and just forum for this litigation, and the only sensible place for this action to be tried.

**A.    This Action Could Have Been Brought in the Southern District of New York**

Under 28 U.S.C. §1391(b)(1), venue is proper when the action is brought in a judicial district where any defendant resides, if all defendants reside in the same State.

Clearly, this action could have been brought in the Southern District of New York under this provision because Love, the only defendant in this action, resides within the Southern District of New York.  *See* Love Dec. ¶2

**B.    The Ninth Circuit Factors Weigh Heavily in Favor of Transfer to the Southern District of New York**

Here, the vast majority of the relevant factors enumerated by the Ninth Circuit in determining whether to transfer venue militate in favor of transfer.

**1.    Transfer to the Southern District of New York will promote the convenience of the witnesses and parties and reduce the cost of litigation.**

"The convenience of witnesses is . . . the most important factor in passing on a transfer motion." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89

F.R.D. 497, 501 (C.D. Cal. 1981).  Here, if discovery and/or trial should become necessary, then the Southern District of New York would be much more convenient for the witnesses.

The primary witness is, of course, Defendant Love who resides in New York, New York.  Love Dec. ¶2.  Aside from Love, Plaintiff implicates Sam Lutfi and Love's business managers (FAC ¶48), as well as Zoe Louse Brooks (FAC ¶39). While Love's business managers and Lutfi reside here and had only snippets of contact with Plaintiff, mostly about her requests to be paid, Love Dec. ¶8, Ms. Brooks, who was Love's personal assistant, makes her home in London, England, Love Dec. ¶4, so New York is more convenient for the parties and for her. In addition, Hershey Vallarta and Cassandra Dupiton, who were respectively Love's house manager and executive assistant who had direct contact with Plaintiff, Love Dec., ¶4, live in New York City or its vicinity. Finally, Jonathan Daniel, Love's personal manager who has relevant knowledge of Plaintiff, resides and works in New York, New York. Love Dec. ¶4.

Based upon the location of these key witnesses, most of whom are in New York, it would clearly be more convenient, less costly, and less disruptive, for these proceedings to take place in the Southern District of New York instead of these witnesses having to attend judicial proceedings in this District. *See Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983) ("[C]ost of obtaining attendance of willing, witnesses" is an important consideration in determining convenience of a particular venue.).  This is particularly true because Plaintiff's chosen venue is nearly 3,000 miles from the witnesses in New York City and over 5,000 miles from the witness (Ms. Brooks) in London, England.  *See In re Volkswagon of America, Inc.*, 506 F. 3d 376, 386 (5th Cir. 2007). ("When the distance between an existing venue for trial of a matter and a proposed venue under §1404 is more than 100 miles, the factor of

1  inconvenience to witnesses increases in direct relationship to the additional distance
2  to be traveled.").

3        The convenience of the witnesses deserves additional weight where, as here,
4  the defendant in this action, Ms. Love, is the key person who engaged in contact with
5  Labrie, Love Dec. ¶5, and Ms. Love lives in New York, far away from the present
6  venue, Love Dec. ¶2.  *See English v. United Brands Co.*, 1974 U.S. Dist. LEXIS
7  11702, at *4 (N.D. Cal. 1974) (noting that "interests of defendants--in minimizing
8  the disruption of their business activities during litigation--are proper factors to be
9  considered by the court on a §1404 motion").

10        All told, the party and witness convenience factors militate strongly in favor of
11  transfer.

12              **2.    Transfer will provide easier access to sources of proof.**

13        This factor also tends toward Love as the documents are all most likely
14  residing on computers which are in the possession and location of the witnesses, the
15  vast majority of whom are in New York.  Freundlich Dec. ¶4; *see, e.g., Miracle*
16  *Blade, LLC v. Ebrands Commerce Group, LLC*, 207 F. Supp. 2d 1136, 1156 (D.
17  Nev. 2002) (where all evidence remains in a given district, consideration of access to
18  proof counsels toward transfer to that district).

19        At worst, this is neutral factor since much of the documentation can probably
20  be analyzed and produced electronically.  Freundlich Dec. ¶4.

21              **3.    Plaintiff's choice of forum is to be afforded little weight here.**

22        Plaintiff's chosen forum does not control where this action should lie.
23  Although a plaintiff's choice is generally afforded substantial weight, a plaintiff's
24  choice of forum should be given "minimal consideration" where, as here, most of the
25  operative facts occurred outside the selected forum and where the plaintiff herself
26  does not live within the selected forum. *Parker v. Saturdays Group, U.S. Dist. LEXIS*
27  19114, at *5 (N.D. Cal. Nov. 13, 1992); *see also Lou v. Belzburg*, 834 F. 2d 730, 739

28

1  (9th Cir. 1987) ("If the operative facts have not occurred within [plaintiff's chosen]

2  forum and [that] forum has no interest in the parties or the subject matter, [the

3  plaintiff's] choice is entitled only to minimal consideration."); *Deputy v. Long-Term*

4  *Disability Plan of Sponsor Aventis Pharmaceuticals*, 2002 WL 31655328, at *3

5  (N.D. Cal. Nov. 21, 2002) (plaintiff's choice of forum is not significant factor when

6  Plaintiff does not reside within the forum) (citing *Bryant v. ITT Corp.*, 48 F.Supp.2d

7  829, 832 (N.D.Ill.1999); *Reiffin v. Microsoft Corp.*, 104 F.Supp.2d 48, 54, fn. 12

8  (D.C. Cir. 2000)).

9            **4.**    The respective parties' contacts with the forum.

10       Labrie lives in Vancouver, British Columbia, Canada and has not alleged any

11  work that she performed on **any regular basis** in California. As of the middle of

12  2009, Love has lived in New York City, and except for sporadic visits to Los

13  Angeles, does not have any contact with this forum. Love Dec. ¶¶2, 5.

14       This factor militates in favor of transfer to the Southern District of New York.

15            **5.**    The contacts relating to the plaintiff's cause of action in the

16                   chosen forum

17       The contacts with this forum are miniscule at best.  During the little over a

18  year that Labrie allegedly performed services for Love, Labrie was only in Los

19  Angeles for two trips of eight days each, while Love was in New York for most of

20  that year.  *See* FAC ¶¶12, 41; Love Dec. ¶2.  Moreover, Labrie does not allege any

21  acts or omissions in this forum with respect to her *Tameny* and IIED claims.  *See,*

22  *e.g.,* FAC¶¶43 (*Tameny* claims), 76-94 (*Tameny* claims), 44 (IIED claim), 95-99

23  (IIED claim).

24       And, as set forth in the Love Dec. ¶5, aside for the possibility that Love may

25  have sent or received some e-mails from Labrie during Love's brief visits here, Love

26  never communicated with, nor met with Labrie in this District. The only time Love

27  and Labrie ever met face to face was in New York, New York.

28

**DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO  DISMISS AND/OR TO TRANSFER VENUE**
**RE FAC; MEMORANDUM AND DECLARATIONS IN SUPPORT THEREOF**

### 6.   The state that is most familiar with the governing law

Labrie's FAC presents two generic, common law claims (*i.e.,* breach of contract and intentional infliction of emotional distress) and six Employment claims based upon California case law and statutes.  While a California court may have greater familiarity generally with the law underlying Labrie's Employment claims, such familiarity should be afforded no weight here where those claims are easily dismissible because, *inter alia*, statutory and federal Constitutional principles prohibit application of California's employment law to extraterritorial activities.  *See* Rule 12(b)(6) Motion, *infra*, pp. 14-17 .  Should this Court choose to transfer venue and not to adjudicate the merits of the Rule 12(b)(6) challenges, the transferee New York federal court would be sufficiently familiar with the relevant statutory and federal Constitutional principles to adjudicate Love's Rule 12(b)(6) Motion (and any other law- and/or evidence-based adjudication, if necessary) as to Labrie's Employment claims.  And, of course, with respect to Labrie's two generic, common law claims, those claims can easily be adjudicated by the transferee New York court as New York law recognizes those same common law actions.[8]

### 7.   The availability of compulsory process to compel attendance of unwilling non party witnesses

Since the majority of the key non-party witnesses are either in New York or outside of this District, this factor weighs in factor of transfer.  *See* Love Dec. ¶4.

For the foregoing reasons,[9] transfer to the Southern District of New York under section 1404(a) would be an appropriate disposition.

---

[8] Love respectfully submits that this Court could, in its discretion, decide the 12(b)(6) motion to dismiss the irreparably infirm IIED claim and the inapplicable California Employment Law claims and then transfer venue for the remaining breach of contract claim in the interest of justice and efficiency.

[9] As for the remaining factor concerning where the alleged personal services contract was negotiated, there is some dispute that came to light in the meet and confer prior to Love's motions as to Labrie's initial Complaint, as to where the contract was negotiated and with whom.  *See* Freundlich Dec. ¶2. Accordingly, that factor is difficult to analyze without further discovery.

**DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO  DISMISS AND/OR TO TRANSFER VENUE RE FAC; MEMORANDUM AND DECLARATIONS IN SUPPORT THEREOF**

## IV. THE COURT SHOULD DISMISS ALL OF LABRIE'S CLAIMS, EXCEPT FOR THE BREACH OF CONTRACT CLAIM

### A. Standard Governing a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

"A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint." *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1024 (N.D. Cal. 2003). Dismissal pursuant to Rule 12(b)(6) is proper "where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *eCash Technologies v. Guargliardo*, 127 F. Supp. 2d 1069, 1074 (C.D. Cal. 2000) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). In deciding whether a plaintiff has pleaded facts establishing she "is entitled to relief," Fed. R. Civ. P. 8(a)(2), "[t]he Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them." *eCash*, 127 F. Supp. 2d at 1074. But, this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . ." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Twombly*, 550 U.S. at 570).

Likewise, the arbitration clause in the parties' confidentiality agreement, mentioned in FAC ¶49, is a red herring, irrelevant for a number of a reasons.  **First**, the arbitration clause covers solely "breaches" of confidentiality and not the kinds of claims brought by Labrie in her FAC.  **Second**, the alleged forum selection clause within the purported arbitration clause applied only to an expedited arbitration and was not meant to subject Ms. Love to a drawn out Court battle in Los Angeles. **Third**, in any event, the alleged arbitration clause and purported forum selection clause therein are inapposite because Labrie has waived those clauses by filing suit in court.

## B.   All Six of Labrie's Employment Claims Fail

Labrie's six Employment claim (comprised of the three *Tameny* claims and three Labor Code claims) require dismissal because:  (1)  no purported conduct giving rise to Labrie's *Tameny* claims is alleged to occur within California and therefore the *Tameny* claims fail due to the general inability to apply California law extraterritorially to conduct completely outside the state; (2) Labrie has failed to allege facts indicating she was an employee rather than an independent contractor, and therefore her Employment claims fail for this reason; and (3) Labrie's Employment claims also fail because various provisions within the United States Constitution prohibit the application of California employment law where, as here, nearly all the alleged work was performed outside the state, let alone outside the country.

### 1.   Labrie's *Tameny* claims fail because no purported conduct giving rise to those claims is alleged to have occurred within California

Labrie's *Tameny* claims fail because Labrie does not and cannot allege that her "constructive discharge in violation of public policy" occurred while she was in California or that any actions (i.e., alleged violations of public policy) giving rise to her alleged constructive discharge happened during her two very brief trips to Los Angeles.

Labrie's *Tameny* claims, which are wrongful termination claims based upon supposed violations of public policy as codified in **California statutes** (here, the Labor Code, Penal Code, and Civil Code), are not cognizable because the California statutes underlying the claims cannot be applied extraterritorially.  *See Green v. Ralee Engineering Co.*, 19 Cal.4th 66, 79 (1998) ("[W]rongful termination cases involving a *Tameny* [claim] are limited to those claims finding support in an important public policy based on a statutory or constitutional provision.");  *Priyanto*

1   *v. M/S AMSTERDAM*, 2009 WL 175739, at *5 (C.D. Cal. Jan. 23, 2009) (general

2   presumption that California statutes are not given extraterritorial effect) (citing *North*

3   *Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1 (1916)).

4       The gravamen of Labrie's *Tameny* claims is that Love allegedly "created a

5   hostile work environment; a work environment rife with retaliation…such that

6   [Labrie] had no choice but to leave her job with [Love.]"  FAC ¶¶77, 84, 90.  Yet,

7   Labrie fails to allege that this "hostile work environment" existed during her two

8   brief and only times in California.

9       Since Labrie has alleged no facts indicating any nexus between California and

10  her alleged wrongful termination, *see, e.g.*  FAC ¶41, her *Tameny* claims fail as a

11  matter of law.  *See Green*, 19 Cal.4th at 79 (*Tameny* claims of wrongful discharge

12  must be based on a statutory or constitutional provision); *Priyanto*, 2009 WL

13  175739, at *5 (general presumption that California statutes are not given

14  extraterritorial effect) (citing *North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1).

15       2.   The Employment claims fail because Labrie has not alleged

16            facts that she was Love's employee

17      Aside from cursory allegations of a supposed employment relationship

18  between Love and Labrie, *see e.g.*, FAC ¶28, Plaintiff **fails to allege facts** indicating

19  that she was an employee (rather than an independent contractor) and that Love was

20  her employer. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding

21  that for a claim to survive a motion to dismiss, "requires more than labels and

22  conclusions, and a formulaic recitation of the elements of a cause of action will not

23  do."); *see also Varisco v. Gateway Science and Engineering, Inc.*, 166 Cal.App.4th

24  1099, 1102-03 (2008) (holding that independent contractors cannot assert *Tameny*

25  claims) (citing *Sistare-Meyer v. Young Men's Christian Assn.*, 58 Cal.App.4th 10, 18

26  (1997)  (same)); West, *Cal. Prac. Guide Employment Litigation* 11:116

27

28

("Independent contractors are not 'employees' covered by [California's] wage and hour laws.").

Accordingly, Labrie's Employment claims must be dismissed for this reason.

### 3.   Labrie's Employment claims fail on Constitutional grounds

Labrie, a Canadian resident, FAC ¶1, alleges that out of the 379 days she purportedly provides services for Love, approximately 20 (or ~5%) of those days were spent in California, *see* FAC ¶¶12, 17, 21, 41.  The rest of the time—or approximately 95% of the relevant time—Labrie was remotely providing alleged services from her home in Canada.  *See* FAC ¶¶1, 16 (Labrie admits that the alleged work assignments during her two very brief trips to California were the only assignments performed by her within the United States.).

Labrie's Employment claims, which seek to apply California employment law to alleged services that were rendered almost exclusively outside this country, run afoul of various federal Constitutional provisions, including, but not limited to:  (1) The Foreign Commerce Clause; (2) The Due Process Clause; and (3) The Full Faith and Credit Clause.

**The Foreign Commerce Clause**

Courts have found unconstitutional under the Foreign Commerce Clause the application of state law "where the practical effect…is to control conduct beyond the boundaries of the State."  *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 69 (1st Cir. 1999) (citing *Healy v. Beer Institute*, 491 U.S. 324, 336 (1989)).  Here, the application of California employment law to in "effect" regulate the work environment, hours, and wages of Labrie—an individual who admits to performing services almost exclusively from Canada, *see* FAC ¶¶1, 16—would clearly violate the Foreign Commerce.

Accordingly, Labrie's Employment claims fail.

**The Due Process and Full Faith and Credit Clauses**

1    Labrie's Employment claims are also infirm under the Constitution's Due

2    Process and Full Faith and Credit Clauses.

3    That is, given the lack of any "significant contacts" with California here,

4    application or "choice" of California law would run afoul of these two clauses. *See*

5    *Campbell*, 42 Cal.App.4th 1850, 1858-59 (1996) ("In order to ensure that the choice

6    of law is neither arbitrary nor fundamentally unfair… the Court has invalidated

7    [under the Due Process and Full Faith and Credit Clauses] the choice of law of a

8    State which has had no significant contact or significant aggregation of contacts,

9    creating state interests, with the parties and the occurrence or transaction.") (citing

10   *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 308 (1981)); *see also Home Ins. Co.*

11   *v. Dick*, 281 U.S. 397 (1930) (finding unconstitutional under the Due Process Clause

12   the application of Texas law to an insurance policy issued by a Mexican insurer and

13   New York reinsurer to a policyholder who resided in Mexico).

14   Here, the application or "choice" of California law to regulate the work of

15   someone who "is and at all relevant times [mentioned in the Complaint] was a

16   resident of the city of Vancouver, British Columbia, Canada," FAC ¶1, and who has

17   alleged a *de minimis* amount of work she performed in California, *see* FAC ¶¶12, 17,

18   21, 41, would clearly violate these two Constitutional clauses.

19   **C.    Labrie's IIED Claim is Insufficiently Pled and Must Be Dismissed**

20   Labrie's IIED claim is also subject to dismissal.  The IIED claim fails because

21   Labrie has not and cannot plead sufficient facts to state an IIED claim.  Specifically,

22   Labrie does not and cannot allege any facts that Love "engaged in extreme and

23   outrageous conduct [vis-à-vis Labrie] that exceeded the bounds of what is generally

24   tolerated in a civilized society." *Braunling v. Countrywide Home Loans, Inc.*, 220

25   F.3d 1154, 1158 (9th Cir. 2000).

26   In addition, the IIED claim is also not cognizable because the conduct alleged

27   in the FAC, which at most amounts to a garden variety breach of contract claim,

28

cannot serve as the basis for an IIED claim.  *See generally Erlich v. Menezes*, 21 Cal.4th 543 (1999) (holding that breach of contract cannot typically serve as basis for IIED claim).  Similarly, Labrie's alleged wrongful termination, *see* FAC ¶99, is an insufficient basis for her IIED claim.  *See, e.g., Walker v. Boeing Corp.*, 218 F.Supp.2d 1177, 1190 (C.D. Cal. 2002) ("Terminating an employee for improper…reasons, like many other adverse personnel management decisions, is insufficiently extreme or outrageous to give rise to a claim for intentional infliction of emotional distress.") (citing *Janken v. GM Hughes Elecs.*, 46 Cal.App.4th 55, 61, 79-80 (1996)).

For these reasons, Labrie's IIED claim is irreparably infirm and must be dismissed.

## V.   CONCLUSION

For the foregoing reasons, the Court should:

(1)   Dismiss this action or transfer venue to the Southern District of New York as that venue is proper and the current venue is not;

(2)  In the alternative, applying the factors considered by courts within Ninth Circuit, this Court should transfer this action to the Southern District of        New York because it would be more convenient for the parties and witnesses        and would serve the interest of justice;

(3) Under FRCP 12(b)(6), the Court should dismiss Plaintiff's six Employment claims and the IIED Claim.

Dated:  November 14, 2012                    FREUNDLICH LAW

Kenneth D. Freundlich

By: *Kenneth D. Freundlich*
_____
Kenneth D. Freundlich
Attorneys for Defendant
Courtney Love Cobain

**DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO  DISMISS AND/OR TO TRANSFER VENUE RE FAC; MEMORANDUM AND DECLARATIONS IN SUPPORT THEREOF**

# DECLARATION OF COURTNEY LOVE COBAIN

I, Courtney Love Cobain, declare:

1. I am the Defendant in this action which has been removed from State Court to this Court and submit this declaration in support of my motions to dismiss or transfer venue of this action to the Southern District of New York. The facts stated herein are true and correct and of my own personal knowledge. If called and sworn as a witness, I could and would testify competently thereto under oath.

2. Currently, and at all times that Plaintiff Jessica Labrie ("Labrie") purports to have performed services for me, I have been residing and domiciled in New York City, having moved here in 2009 from Los Angeles where I had previously lived. I do travel from New York to perform concerts and various other entertainment services but I have done very little travelling outside of New York since 2010 when my group "Hole" engaged in a worldwide tour.

3. I do not keep an office or residence in Los Angeles nor do I personally do regular business from there, except that my business managers, who pay my bills are located there.

4. The key witnesses in this matter who dealt with Labrie on my behalf are myself, *Jonathan Daniel*, my personal manager during all the relevant times, *Zoe Louise Brooks*, my personal assistant during all the relevant times, *Cassandra Dupiton*, my Executive Assistant during all relevant times, and *Hershey Vallarta*, my house manager during all relevant times. Except for Ms. Brooks, who resides in London, England, all of those witnesses live in New York City or its outskirts. My understanding is that the relevant documents are stored on their computers which are with them.

5. I only briefly met Labrie face to face once and that occurred at my home in New York City. I was the key person in contact with Labrie during the alleged period of time. Labrie lived in Canada for the entire time she was in contact with me,

---

1

1  except for two very brief trips to Los Angeles from January 28 to February 4, 2011

2  and from May 31 to June 7, 2011, during which time she primarily located and

3  shipped several boxes of my belonging out of Los Angeles to me or my

4  representatives.

5       6.    In my previous declaration, dated September 17, 2012, I inadvertently

6  stated, based upon my understanding at the time, that Labrie had only made one trip

7  to Los Angeles during the relevant times she allegedly performed services for me.

8  After consulting with my business managers, I have since learned that Labrie made

9  two brief trips to Los Angeles during the dates listed in the preceding paragraph.

10       7.    Except for Labrie's two brief trips to Los Angeles and the few days I

11  might have passed through Los Angeles on my "Hole" tour, from where I might have

12  exchanged a few e-mails with Labrie, no business related to Labrie and myself took

13  place in Los Angeles.

14       8.    While Labrie might also contend that Sam Lutfi and my business

15  managers, who are located in Los Angeles, are relevant witnesses to this case, their

16  only involvement was in processing Labrie's demands for payment and nothing else.

17      I declare under penalty of perjury that the foregoing is true and correct.

18      Executed on November 13, 2012 in New York, New York.

19

20

21                   COURTNEY LOVE COBAIN

22

23

24

25

26

27

28

## <u>DECLARATION OF KENNETH D. FREUNDLICH</u>

I, Kenneth D. Freundlich, declare:

1.      I am counsel for Defendant Courtney Love Cobain in this action. The facts stated herein are true and correct and of my own personal knowledge. If called and sworn as a witness, I could and would testify competently thereto under oath.

2.      Prior to filing the previous motions as to Jessica Labrie's ("Labrie") initial Complaint, I met and conferred with counsel for the Plaintiff via e-mail on September 13 and 14, 2012, and we were not able to reach any agreements to avoid those motions.  In particular, there was some dispute that came to light in the meet and confer as to where Labrie's alleged employment agreement was negotiated and with whom.

3.      Prior to filing the present motions as to Labrie's First Amended Complaint, I met and conferred with counsel for the Plaintiff letter dated October 22, 2012 and via telephone on November 1, 2012.  We were not able to reach any agreements to avoid these motions.

4.      In this litigation, while most of the relevant documents may be stored on computers outside of California, much, if not all, of these documents can most likely be analyzed and produced electronically to and from witnesses' and counsel's computers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 14, 2012 in Encino, California.

_____
KENNETH D. FREUNDLICH

**DEFENDANT'S NOTICE OF MOTIONS AND MOTIONS TO  DISMISS AND/OR TO TRANSFER VENUE RE FAC; MEMORANDUM AND DECLARATIONS IN SUPPORT THEREOF**